WILLIAM K. HARRINGTON  
United States Trustee, Region 2  
U.S. Department of Justice  
Office of the United States Trustee  
One Bowling Green, Room 534  
New York, New York 10004  
Telephone: (212) 510-0500  
By: Daniel Rudewicz, Trial Attorney  

**Hearing Date: May 21, 2025**  
**Hearing Time: 10:00 a.m.**

UNITED STATES BANKRUPTCY COURT  
SOUTHERN DISTRICT OF NEW YORK

| In re:<br><br>　　Adriana D Raposo,<br><br>　　　　　　　　　Debtor. | Chapter 7<br><br>Case No. 24-11335 (LGB) |
|---|---|

**THE UNITED STATES TRUSTEE'S MOTION TO DISMISS THIS CHAPTER 7 CASE OR, IN THE ALTERNATIVE, TO CONVERT THIS CASE TO CHAPTER 13**

William K. Harrington, the United States Trustee for Region 2 (the "United States Trustee") files this motion (the "Motion") for an order dismissing this chapter 7 case or, in the alternative, converting this case to one under chapter 13. In support thereof, the United States Trustee represents and alleges as follows:

## INTRODUCTION

Cause exists to dismiss or convert this case under 11 U.S.C. § 707(b). Granting relief would be an abuse of the provisions of this chapter as a result of the totality of the circumstances of the debtor's financial situation. 11 U.S.C. § 707(b)(3)(B). While the Debtor was unemployed on the date the petition was filed, the debtor received a letter on the petition date offering her a new job that was to start approximately one week later. The $130,000 salary from her new employment in addition to her co-ownership of two-family residence (which she also lives in), provides the Debtor with a level of income that could be used to pay a significant percentage of her debts in a chapter 13. Accordingly, as set forth in detail below, cause exists to dismiss or convert this case pursuant to 11 U.S.C. § 707(b).

## BACKGROUND

*General Background*

1.  On July 31, 2024 (the "Petition Date"), the Debtor commenced this case by filing a voluntary petition under chapter 7 of title 11 of the United States Code, 11 U.S.C. § 101 *et seq*. (the "Bankruptcy Code"),[1] along with schedules of assets and liabilities (the "Schedules") and a statement of financial affairs (the "SOFA"). *See* Petition, ECF No. 1. The Debtor also filed a Chapter 7 statement of current monthly income and means test calculation (Form 122A-1) (the

---

[1] Unless otherwise stated herein, all section references are to the Bankruptcy Code.

"Means Test Form"). *See* Means Test Form, ECF No. 2.

2.   Gregory M. Messer, Esq., (the "Trustee") was appointed Chapter 7 trustee and thereafter became permanent trustee pursuant to 11 U.S.C. § 702(d).

3.   The Debtor is represented by Peter T. Nguyen ("Debtor's Counsel"), Park & Nguyen, 1809 Paulding Avenue, Bronx, NY 10462-3117. *See* Petition, ECF No. 1.

4.   On September 8, 2024, the Trustee held the meeting of creditors pursuant to 11 U.S.C. § 341(a) (the "341 Meeting"). *See Transcript of Section 341 Meeting of Creditors held September 8, 2024* ("341 Transcript").[2]

5.   On February 5, 2025, the Debtor appeared for a Rule 2004 examination, which was voluntarily agreed to and arranged by Debtor's Counsel and counsel for the United States Trustee. *See* Transcript of Rule 2004 Examination held February 5, 2025 ("Examination Transcript").[3]

6.   The current deadline to file a motion under sections 707(b) and 727 of the Bankruptcy Code and Bankruptcy Rules 1017 and 4004 is April 7, 2025. *See* ECF No. 13.

***Additional Background***

7.   The Debtor certified under penalty of perjury to the accuracy of the Petition, Schedules, SOFA, and Means Test Form. *See* ECF Nos. 1, 2.

8.   In her Petition, the Debtor asserts that her debts are primarily consumer debts, as defined in 11 U.S.C. § 101(8). *See* Petition, Question 16, ECF No. 1.

---

[2] Relevant portions of the 341 Transcript are attached as Exhibit A to the *Declaration of Daniel Rudewicz in Support of the United States Trustee's Motion to Dismiss this Chapter 7 Case or, In the Alternative, to Convert This Case to Chapter 13* ("Rudewicz Decl.").
[3] Relevant portions of the Examination Transcript are attached as Exhibit B to the Rudewicz Decl.

- 2 -

*The Debtor's Assets*

### The Olinville Property

9. The Debtor's primary asset is a two-family residential real property located at 3649 Olinville Avenue, Bronx, NY 10467 (the "Olinville Property"). Schedule A/B, Question 1, ECF No. 1; *see also* Examination Transcript at 10:6-16 ("It's a two-family home. . . . [T]here are two separate entrances. So there's above -- so there's a set of stairs to go to the upstairs and then I'm on the downstairs part.").

10. As of the Petition Date, the Debtor listed the value of the Olinville Property at $1.0508 million. *See id.* The Debtor's 50% ownership interest in the Olinville Property is valued at $525,400.00. *Id.* The Debtor's brother owns the other 50% of the Olinville Property. *See* Examination Transcript at 11:3-8.

11. Creditor Freedom Mortgage has a secured claim of $745,087.00, with the resulting equity in the Olinville Property for the Debtor and her brother being $305,713.00 or $152,856.50 each. Schedule D, Question 2.1, ECF No. 1.

12. The Debtor listed her home address as the Olinville Property. *See* Petition, Question 5, ECF No. 1. The Debtor has claimed her equity in the Olinville Property as exempt. Schedule C, Question 2, ECF No. 1 (claiming exemption of $152,856.50 pursuant to NYCPLR § 5206).

### Other Assets

13. The Debtor has scheduled additional total assets of $52,094, including: (i) a vehicle valued at $10,787, which the Debtor has stated she will surrender; (ii) household goods and furnishings valued at $2,500; (iii) electronics valued at $1,000; (v) clothes valued at $400;

and (vi) jewelry valued at $200. *See* Schedule A/B, ECF No. 1. The Debtor intends to surrender the vehicle. *See* Statement of Intention, ECF No. 1.

*The Debtor's Liabilities*

14. The Debtor has scheduled $1,501,230 in total liabilities. The Debtor has scheduled secured debt in the total amount of $772,164, including a mortgage of $745,087 and a Kia Motors Finance claim of $27,077. *See* Schedule D, ECF No. 1. The Debtor has scheduled unsecured debt in the total amount of $193,111, including student loans totaling $115,218. *See* Schedule E/F, ECF No. 1. ($47,424.00 owed to Dept. of Ed./Nelnet and $67,794 owed to Discover Student Loans).

*The Debtor's Rental Income*

15. The Debtor's Schedules listed monthly income of $3,000, which was entirely derived from "Rental Income & Family Support."

Revenue from the Olinville Property

16. The Olinville Property has five paying tenants, who pay a total of $5,500 per month or an average of $1,100 per tenant.

17. The other three tenants are: (i) the Debtor, (ii) the Debtor's mother, and (iii) the Debtor's adult daughter. *See* 341 Transcript at 4:11-14; Examination Transcript at 12:5-12. These three tenants do not pay rent, but the Debtor's mother pays approximately $500 a month as support for the Debtor's utility payments. *See* Examination Transcript at 36:18-37:4.

Expenses for the Olinville Property

18. The Olinville Property mortgage payment, which includes an escrow for taxes and insurance, is $5,137 per month. *See* Examination Transcript at 20:23-24. The other Olinville

- 4 -

Property expenses are $200, which consists of (i) $100 for electricity, heat, natural gas and (ii) $100 for telephone, cell phone, internet, satellite, and cable services. *See* Schedule J, ECF No. 1; *but see* Examination Transcript at 32:1-10 (noting that in the winter months the electricity, heat, natural gas expenses have increased to $300 to $400 per month)[4]; Examination Transcript at 15:1-3 (noting that cable is $265 per month); Examination Transcript at 15:17-16:4 (noting that water and sewer expense is "[$]400..every few months" and alarm/security cost is about $55 per month).

### Income from the Olinville Property

19. With the total revenue (exclusive of any implied rent) for the Olinville Property of $5,500 plus $500 in utility-payment support from the Debtor's mother, and after subtracting the mortgage payment and total scheduled expenses, the Olinville Property would generate approximately $763 in income. The Debtor stated that any amount above the mortgage payment is deposited into a savings account to be used to pay for repairs or any other expenses. *See* Examination Transcript at 13:4-9.[5]

*Employment Income*

20. As of the Petition Date—i.e., July 31, 2024—the Debtor stated on Schedule I that she was "[n]ot employed." *See* Schedule I, ECF No. 1.

21. On the Petition Date, the Debtor received a formal letter offering her employment at an annualized base salary of $130,000. *See* 341 Transcript at 4:7-10; Examination Transcript

---

[4] "Q. So starting with the first one, electricity, heat, and natural gas, what number would be -- based on the current time - - I understand you filed this at the time of bankruptcy, but based on your current expenses, what would the heat, electricity, and natural gas be? A. Those have gone up pretty significantly, especially over the winter months. So instead of $100 we're looking at 3- or $400."

[5] "Q. For any amounts that are left in the account after the mortgage is paid, how is it split between you and [the Debtor's brother]? A. It just goes into a savings account that we have set up at TD. And we use that for like repairs or any other expenses."

at 23:2-5. The Debtor began interviewing for the position in mid-July of 2024. *See* Examination Transcript at 23:19-22.

## ARGUMENT

I. **Dismissal or Conversion Is Appropriate Under 11 U.S.C. §§ 707(b)(1) Because Granting Relief Would Be an Abuse of the Provisions of Chapter 7.**

Section 707(b)(1) provides in part:
>  (b)(1)  After notice and a hearing, the court . . . may dismiss a case filed by an individual debtor under this chapter whose debts are primarily consumer debts, or with the debtor's consent, convert such case to a case under chapter 11 or 13 of this title, if it finds that the granting of relief would be an abuse of the provisions of this chapter.

11 U.S.C. § 707(b)(1).

Here, the Debtor asserts that her debts are primarily consumer debts, as defined in 11 U.S.C. § 101(8). Petition, Question 16, ECF No. 1. Thus, if the Court finds that the granting of relief would be an abuse of the provisions of this chapter, the Court may dismiss or convert this case. *See* 11 U.S.C. § 707(b)(1).

II. **Granting of Relief Would be an Abuse of the Provisions of This Chapter As Set Forth In 11 U.S.C. § 707(b)(3)(B).**

Section 707(b)(3) of the Bankruptcy Code provides that:

> (3)  In considering under [707(b)(1)] whether the granting of relief would be an abuse of the provisions of this chapter in a case in which the presumption in subparagraph (A)(i) of such paragraph does not arise or is rebutted, the court shall consider:
>
> (A) whether the debtor filed the petition in bad faith; or
>
> (B) the totality of the circumstances (including whether the debtor seeks to reject a personal services contract and the financial need for such rejection as sought by the debtor) of the debtor's financial situation demonstrates abuse.

11 U.S.C. §§ 707(b)(3).

Section 707(b)(3) codifies two judicially created tests for substantial abuse under the old §707(b): bad faith and totality of the circumstances. *In re Singletary*, 354 B.R. 455, 465 (Bankr. S. D. Tex. 2006). The United States Trustee requests that the court consider the totality of the circumstances of the debtor's financial situation.

The totality-of-the-circumstances test is "a two-part inquiry which considers [(i)] the debtor's ability to pay as the primary factor and [(ii)] then weighs other circumstances to determine whether there are any mitigating factors warranting discharge or any aggravating factors warranting dismissal of the chapter 7 petition." *In re Stroh*, No. 18-36301 (CGM), 2020 WL 2125884, at *2 (Bankr. S.D.N.Y. May 4, 2020) (citing *In re Aiello*, 284 B.R.756, 760 (Bankr. E.D.N.Y. 2002) (citing *In re Carlton*, 211 B.R. 468, 477-78 (Bankr. W.D.N.Y. 1997))).

### A. The Debtor's Ability to Pay

In the Second Circuit, pre-BAPCPA, the ability to repay debts was the primary factor for a court to consider in deciding whether to dismiss a case for "substantial abuse" under a "totality of circumstances" test. *In re Kornfield*, 164 F.3d 778, 784 (2d Cir. 1999) (holding that a "totality of circumstances inquiry is equitable in nature"); *see also Stuart v. U.S. Trustee (In re Stewart)*, 175 F.3d 796, 809 (10th Cir. 1999).

Likewise, courts post-BAPCPA have found that the ability to pay is still the primary factor in consideration under the "totality of circumstances" test of § 707(b)(3). *In re Stroh*, No. 18-36301 (CGM), 2020 WL 2125884, at *2 (Bankr. S.D.N.Y. May 4, 2020); *see also In re Simmons*, 357 B.R. 480 (Bankr. N. D. Ohio 2006) ("If a debtor's overall financial circumstances would easily allow the debtor to repay debts . . . the court may find abuse"); *In re Pennington*,

348 B.R. 647, 650 (Bankr. D. Del. 2006) (concluding that under § 707(b)(3), the Court must consider "whether the Debtor has the ability to repay his creditors").

In determining a Debtor's ability to pay, courts consider postpetition income. "Although [a court's] consideration of information on the debtor's financial situation after the petition date is not appropriate in calculating a debtor's Means Test, the Court is allowed to consider that information in its analysis of whether the granting of relief would be abusive under the totality of the circumstances test." *In re Sperry*, No. 22-20287 (JJT), 2023 WL 7311233, at *5 (Bankr. D. Conn. Nov. 6, 2023) (citing *In re McKay*, 557 B.R. at 815–16); *see also In re Pennington*, 348 B.R. 647, 651 (Bankr. D. Del. 2006)("[T]he Court concludes that it must consider the Debtor's financial condition at the time of the hearing on the motion to dismiss in determining whether granting chapter 7 relief is an abuse under section 707(b)(3)."); *In re Pak*, 343 B.R. 239, 245–46 (Bankr. N.D. Cal. 2006) (noting that "the actual and anticipated future income must be considered, rather than simply his 'current monthly income,' in determining the debtor's 'projected disposable income' for purposes of confirming a chapter 13 plan" and "to use in deciding whether to grant or deny a motion to dismiss a chapter 7 case under section 707(b)(3)(B)"); *Cf. Hamilton v. Lanning*, 560 U.S. 505, 520 (2010)("In cases in which a debtor's disposable income during the 6–month lookback period is either substantially lower or higher than the debtor's disposable income during the plan period, the mechanical approach would produce senseless results that we do not think Congress intended.").

In the instant matter, the Debtor has the ability to repay a significant portion of her non-priority unsecured debts through a chapter 13 repayment plan. As stated, the Debtor currently has an estimated monthly gross income of $10,833.33 and post-deductions receives

approximately $6,600. *See* Examination Transcript at 23:6-10 (receiving an average of about $3,300 semi-monthly). Using the Debtor's scheduled expenses (which include expenses for the Olinville Property) of $3,100—and without taking into account any rental income—the Debtor would still have $3,400 available each month. *See* Schedule J. While there may be additional adjustments, for illustration purposes, this amount when multiplied by 36 months and 60 to reflect a hypothetical chapter 13 plan would total $122,400 and $204,000, respectively—which the latter would be equivalent to 63% and 106% of the Debtor's unsecured debt. In other words, the Debtor could possibly repay all of her creditors in full. Regardless of whether 36 months or 60 months is used, the percentage is above the 25% threshold commonly used by courts. *See In re Pennington*, 348 B.R. 647, 651–52 (Bankr. D. Del. 2006) (noting that the ability to pay 25% or more of unsecured debts is the appropriate threshold for courts to consider. (citing Hon. Eugene R. Wedoff, *Judicial Discretion to Find Abuse Under § 707(b)(3)*, Am. Bankr. Inst. Journal, April 2006, at 52). In sum, the Debtor clearly has an ability to pay.

### B. Non-Primary Factors

After considering the primary factor of a debtor's ability to pay, courts will also consider an array of other factors. Some courts have continued to use *Kornfield* as a key starting point for analyzing the totality-of-the-circumstances test. *See In re Stroh*, No. 18-36301 (CGM), 2020 WL 2125884, at *2 (Bankr. S.D.N.Y. May 4, 2020); *see also In re Wise*, 453 B.R. 220, 227 (Bankr. D. Vt. 2011) ("Subsequent to the enactment of […] [BAPCPA], this Court and others within the Second Circuit have continued to find *Kornfield* to be the proper standard for assessing the totality of the circumstances under 11 U.S.C. § 707(b)(3)(B).").

The *Kornfield* opinion by the Second Circuit did not provide a list of the 15 oft-mentioned *Kornfield* factors, rather the Second Circuit stated:

> We also agree with the bankruptcy court that the debtors' petition cannot satisfy a totality of circumstances test no matter which variation of such a test is applied. We need not, therefore, spell out in greater detail the precise content of the proper totality of circumstances test in this circuit.

*In re Kornfield*, 164 F.3d 778, 784 (2d Cir. 1999). The *Kornfield* factors are listed in the bankruptcy court's opinion, which was subsequently affirmed by the district court and the court of appeals. *In re Carlton*, 211 B.R. 468, 478 (Bankr. W.D.N.Y.), *aff'd sub nom. Kornfield v. Schwartz,* 214 B.R. 705 (W.D.N.Y. 1997), *aff'd sub nom. In re Kornfield*, 164 F.3d 778 (2d Cir. 1999).

In its opinion, the Bankruptcy Court for the Western District of New York looked to the decision in *In re Ontiveros*, 198 B.R. 284 (C.D.Ill.1996) ("Ontiveros") and law review articles that utilized factors largely-derived from three other pre-BAPCPA cases court cases: (1) *In re Green,* 934 F.2d 568 (4th Cir.1991) ("*Green*"); (2) In re Krohn, 886 F.2d 123 (6th Cir.1989) ("*Krohn* "); (3) *In re Fitzgerald,* 155 B.R. 711 (Bankr. W.D. Tex. 1993) ("*Fitzgerald* "). *Carlton*, 211 B.R. at 476.

In finalizing its list of factors, the Bankruptcy Court for the Western District of New York stated:

> The factors which the Court will consider are any and all relevant factors brought to its attention by the parties in a particular case, as well as the following non-exclusive list of factors, which the Court believes will likely be an expanding list if additional substantial abuse motions are brought before it for decision:
> (1) Whether the bankruptcy petition was filed because of sudden illness, calamity, disability, or unemployment (*Green* );
> (2) Whether the debtor incurred cash advances and made consumer purchases far in excess of his ability to pay (*Green* );
> (3) Whether the petition was filed in good faith (*Green* );

(4) Whether the debtor exhibited good faith and candor in filing his schedules and other documents (*Krohn* );
(5) Whether the debtor has engaged in "eve of bankruptcy purchases" (*Krohn* );
(6) Whether the debtor was forced into Chapter 7 by unforeseen or catastrophic events (*Krohn* );
(7) Whether the debtor's disposable income permits the liquidation of his consumer debts with relative ease (*Krohn* );
(8) Whether the debtor enjoys a stable source of future income (*Krohn* );
(9) Whether the debtor is eligible for adjustment of his debts through Chapter 13 of the Bankruptcy Code (*Krohn* );
(10) Whether there are state remedies with the potential to ease the debtor's financial predicament (*Krohn* );
(11) Whether there is relief obtainable through private negotiation, and to what degree (*Krohn* );
(12) Whether the debtor's expenses can be reduced significantly without depriving him of adequate food, clothing, shelter, and other necessities (*Krohn* );
(13) Whether the debtor has significant retirement funds which could be voluntarily devoted in whole or in part to the payment of creditors (*In re Stratton,* 136 B.R. 804 (Bankr.C.D.Ill.1991);
(14) Whether the debtor is eligible for relief under Chapter 11 of the Bankruptcy Code (*Fitzgerald* ); and
(15) Whether there is no other choice available to the debtor for working out his financial problems other than Chapter 7, and whether the debtor has explored or attempted other alternatives (*Fitzgerald* ).

*Carlton*, 211 B.R. at 478.

While many of the *Kornfield* factors do not apply, for the factors that do apply, it is unclear whether they are mitigating or just non-aggravating. For example, factor 1 is implicated because the Debtor was unemployed on the date of the petition, however, the debtor is currently employed. *See* Examination Transcript at 22:11-13. While being unemployed may meet the mitigating factor 1, the Debtor is currently employed so the factor would not apply in the same way as it would in, for example, a case with "a frugal family with income over the designated level but with unusually large medical expenses necessary to a child's life." *Kornfield*, 164 F.3d at 783.

For the other factors, the Debtor testified that she did not incur cash advances; did not make any large "eve of bankruptcy purchases"; and attempted to negotiate with creditors. *See* Examination Transcript at 38:11-41:2. Conversely, certain *Kornfield* factors, such as "whether debtor's disposable income permits the liquidation of his consumer debts with relative ease"; "whether the debtor enjoys a stable source of future income"; "whether the debtor is eligible for adjustment of [her] debts through Chapter 13 of the Bankruptcy Code" all favor a finding of abuse. Finally, in addition to considering the non-exclusive list of factors above, "the Court [should] consider are any and all relevant factors brought to its attention by the parties in a particular case." *Carlton*, 211 B.R. at 478. The other relevant factors here are: (i) that the Debtor filed for bankruptcy on the same day she received the employment letter and (ii) that such employment now allows her to possibly pay a significant percentage of her debts under a chapter 13 plan.

*  *  *

The United States Trustee's analysis reveals that the Debtor is an individual with regular income who has the resources to repay a significant percentage of her debts under a chapter 13 plan. Accordingly, the case should be dismissed pursuant to 11 U.S.C. § 707(b)(1) and (3) because, based upon the totality of the circumstances, the Debtor has significant surplus income and the granting of a discharge to the Debtor would constitute an abuse of the Bankruptcy Code.

*[Remainder of page intentionally left blank.]*

## CONCLUSION

WHEREFORE, the United States Trustee respectfully requests that the Court enter an order dismissing this case or, in the alternative, converting it to a case under chapter 13, and granting such other and further relief as may be deemed just and proper.

Dated: New York, New York
April 7, 2025

                                          WILLIAM K. HARRINGTON
                                          UNITED STATES TRUSTEE

By: */s/ Daniel Rudewicz*
Daniel Rudewicz
Trial Attorney
Office of the United States Trustee
One Bowling Green, Room 534
New York, New York 10004
Telephone: (212) 510-0500